IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| JAMES ROBINSON, #121865, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 1:11-CV-657-MHT |
| | ) | [WO] |
| | ) | |
| WILLIAM KAUFMAN and TIMOTHY WIGGINS, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

**I.  INTRODUCTION**

In this 42 U.S.C. § 1983 action, James L. Robinson ["Robinson"], a frequent litigant in this court, challenges the constitutionality of his arrests on December 23, 2010 for public intoxication and use of a false identity to obstruct justice.  *Complaint - Doc. No. 1* at 3. Specifically, Robinson complains that William Kaufman, an officer with the Dothan Police Department, subjected him to a warrantless arrest for these offenses absent probable cause. *Id*. ("Robinson ... was unlawfully and illegally arrested for public intoxication and obstruction of justice, where officers had no probable cause for said charges to be filed, when the elements did not exist for said charges.").  Robinson further asserts that Kaufman and another officer, Timothy Wiggins, conspired with a convenience store clerk to bring about his arrests.  *Id*. at 4.  Robinson seeks declaratory and injunctive relief for the alleged

violations of his constitutional rights.  *Id*. at 7.

The defendants filed a special report, supplemental special report and supporting evidentiary materials addressing Robinson's claims for relief.  Pursuant to the orders entered herein, the court construes the aforementioned reports as a motion for summary judgment. *Order of September 27, 2011 - Doc. No. 11*.  Thus, this case is now pending on the defendants' motion for summary judgment.  Upon consideration of this motion, the evidentiary materials filed in support thereof and the plaintiff's responses, the court concludes that the defendants' motion for summary judgment is due to be granted.

## II.  STANDARD OF REVIEW

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law.'"  *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th  Cir. 2007) (per curiam) (citation to former rule omitted); Fed.R.Civ.P. Rule 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").[1]  The party moving for summary judgment "always bears the initial responsibility

---

[1]Effective December 1, 2010, Rule 56 was "revised to improve the procedures for presenting and deciding summary-judgment motions."  Fed.R.Civ.P. 56 Advisory Committee Notes.  Under this revision, "[s]ubdivision (a) carries forward the summary-judgment standard expressed in former subdivision (c), changing only one word -- genuine 'issue' becomes genuine 'dispute.'  'Dispute' better reflects the focus of a summary-judgment determination."  *Id*. "'Shall' is also restored to express the direction to grant summary judgment."  *Id*.  Thus, although Rule 56 underwent

of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine issue [- now dispute -] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof.  *Id.* at 322-324.

The defendants have met their evidentiary burden and demonstrated the absence of any genuine dispute of material fact.  Thus, the burden shifts to the plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists.  *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed.R.Civ.P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact by [citing to materials in the record including affidavits, relevant documents or other materials] the court may ... grant summary judgment if the motion and supporting materials -- including the facts considered undisputed -- show that the movant is entitled to it.")  A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor.  *Greenberg*, 498 F.3d at 1263.

stylistic changes, its substance remains the same and, therefore, all cases citing prior versions of the rule remain equally applicable to the current rule.

In civil actions filed by inmates, federal courts

must distinguish between evidence of disputed facts and disputed matters of professional judgment.  In respect to the latter, our inferences must accord deference to the views of [law enforcement] authorities.  Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage.

*Beard v. Banks*, 548 U.S. 521, 530, 126 S.Ct. 2572, 2578, 165 L.Ed.2d 697 (2006) (internal citation omitted).  Consequently, to survive the defendants' properly supported motion for summary judgment, Robinson is required to produce "sufficient [favorable] evidence" which would be admissible at trial supporting his claims of constitutional violations.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); Rule 56(e), *Federal Rules of Civil Procedure*.  "If the evidence [on which the nonmoving party relies] is merely colorable ... or is not significantly probative ... summary judgment may be granted." *Id*. at 249-250.  "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party.  *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986)." *Walker v. Darby*, 911 F.2d 1573, 1576-1577 (11th Cir. 1990).  Conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine dispute of material fact and, therefore, do not suffice to oppose a motion for summary judgment. *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (plaintiff's "conclusory assertions ..., in the absence of [admissible] supporting evidence, are insufficient to

4

withstand summary judgment."); *Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir. 1995) (grant of summary judgment appropriate where inmate produces nothing beyond "his own conclusory allegations" challenging actions of the defendants); *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984) ("mere verification of party's own conclusory allegations is not sufficient to oppose summary judgment...."); *Evers v. General Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) ("[C]onclusory allegations without specific supporting facts have no probative value."). Hence, when a plaintiff fails to set forth specific facts supported by requisite evidence sufficient to establish the existence of an element essential to his case and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex*, 477 U.S. at 322 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."); *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607, 609 (11th Cir. 1987) (If on any part of the prima facie case the plaintiff presents insufficient evidence to require submission of the case to the trier of fact, granting of summary judgment is appropriate).

For summary judgment purposes, only disputes involving material facts are relevant. *United States v. One Piece of Real Property Located at 5800 SW 74th Avenue, Miami, Florida*, 363 F.3d 1099, 1101 (11th Cir. 2004). What is material is determined by the substantive law applicable to the case. *Anderson*, 477 U.S. at 248; *Lofton v. Secretary of*

*the Department of Children and Family Services*, 358 F.3d 804, 809 (11th Cir. 2004) ("Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment.").  "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted).  To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts....  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  In cases where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates there is no genuine dispute of material fact and the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper.  *Celotex*, 477 U.S. at 323-324 (summary judgment appropriate where pleadings, evidentiary materials and affidavits before the court show no genuine dispute as to a requisite material fact); *Waddell v. Valley Forge Dental Associates, Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001) (to establish a genuine dispute of material fact, nonmoving party must produce evidence such that reasonable trier of fact could return a verdict in his favor).

Although factual inferences must be viewed in a light most favorable to the

nonmoving party and *pro se* complaints are entitled to liberal interpretation by the courts, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact. *Beard*, 548 U.S. at 525, 126 S.Ct. at 2576; *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). Thus, Robinson's *pro se* status alone does not mandate this court's disregard of elementary principles of production and proof in a civil case. In this case, Robinson fails to demonstrate a requisite genuine dispute of material fact in order to preclude summary judgment. *Matsushita*, *supra*.

### III.  DISCUSSION

#### A.  Relevant Facts

On December 23, 2010, at approximately 11:30 p.m., Robinson entered a convenience store in Dothan, Alabama. The store clerk determined that Robinson fit the description of an individual who on two previous occasions stole merchandise from the store. The store clerk locked Robinson inside the store, called the Dothan Police Department and advised law enforcement officials of the potential that Robinson was the individual involved in the prior thefts of merchandise from the store. Robinson demanded that the clerk open the door so that he could exit the building but the clerk denied this request. *Plaintiff's Response Affidavit - Doc. No. 24-1* at 2. Robinson became agitated and began to undertake whatever means necessary to gain his release from the store, including kicking the door and attempting to pry open the door with an ice scoop. *Id*. When

Robinson ascertained that the clerk had contacted law enforcement officials "he went behind the check out counter" and verbally confronted the clerk. *Id*. at 3. Robinson then went to "the entrance exit door [standing] with his arms folded, and awaited on the law officials [to arrive]." *Id*.

Upon receiving information from a dispatcher regarding the call from the store clerk in which the clerk reported a possible theft in progress, officers Kaufman and Wiggins proceeded to the convenience store. While en route to the store, the dispatcher informed the officers that the suspect was locked in the store and provided them with a description of the suspect as "a black man wearing a black jacket, blue shirt and blue jeans. Dispatch then advised [the officers that the store clerk reported] the suspect was kicking the door, obtained an ice scoop and was hitting the door and had a box cutter on his belt." *Defendants' Exhibit 1 to the Special Report - Doc. No. 7-1* at 2. Upon arriving at the scene, Kaufman could not see in the door due to a vehicle blocking his view. During his approach to the store, Kaufman had his "weapon out and could see and hear the suspect in the store yelling, throwing items and acting irate. [The suspect] was holding the handle of an aluminum ice scoop in his hand. The door to the store was locked. From outside the store I ordered the suspect to the ground and he complied. The store clerk then unlocked the door and I entered the store. For may safety I handcuffed the suspect until I could determine what was going on. The clerk informed me the suspect had been in the store on

8

two prior occasions and was suspected of theft.  The suspect had left the store before the police could arrive on the prior occasions [of the thefts which had occurred at the store]." *Id*.  Kaufman questioned the store clerk about what had transpired that night prior to his arrival at the store and the clerk advised that no thefts or attempted thefts had occurred.

After speaking with the store clerk, Kaufman attempted to obtain Robinson's "side of the story" at which time the officer recognized Robinson as an individual involved in a traffic stop conducted the previous night, December 22, 2009, in which Robinson was a passenger in the stopped vehicle.  *Id*.  During the traffic stop, Kaufman obtained a name and other pertinent information from Robinson.[2]   At the time of the convenience store incident, Kaufman again requested that Robinson provide his name and relevant personal information.  Kaufman needed the information to "run a check on him.  The suspect told me his name was 'Clarence Robinson' and gave his date of birth as June 30, 1953 and his social security number as xxx-xx-9202.  I checked my notes from the night before and this was the same information he gave then." *Id*. at 2-3.  Robinson, however, contends that he did not actually provide this information to Kaufman during their discussion inside the store but that Kaufman simply assumed he was Clarence Robinson based on their previous night's encounter.  *Plaintiff's Response Affidavit - Doc. No. 24-1* at 2.

---

[2]Robinson asserts that the traffic stop resulted in the arrest of the vehicle's driver for drug possession but advises that he suffered no adverse consequences with respect to the incident.  It is clear from the record that, other than obtaining cursory personal information from Robinson through verbal statements, law enforcement officials took no further action against Robinson.

While speaking with the suspect, Kaufman observed that "Mr. Robinson had a very strong odor of alcohol on him; he was slurring his speech and admitted he had consumed four beers.  Mr. Robinson appeared intoxicated and based on my prior law enforcement experience and my personal observation of Mr. Robinson yelling, throwing things in the store and his disorderly behavior when I arrived, I believed he was intoxicated to the point he could endanger himself, other persons or property or by boisterous and offensive conduct annoy other persons in his vicinity, in violation of Alabama Code § 13A-11-10 (1975).  I told Mr. Robinson he was under arrest for public intoxication." *Defendants' Exhibit 1 to the Special Report (Affidavit of William Kaufman) - Doc. No. 7-1 at 3; Defendants' Exhibit 2 to the Special Report (Affidavit of Timothy Wiggins) - Doc. No. 7-2 at 2* ("The suspect was unsteady on his feet had slurred speech and appeared to be intoxicated....  Officer Kaufman told me the suspect was being charged with public intoxication and I took the suspect to my car to secure him and await transport to the jail.").[3]

Robinson does not dispute the observations made by Kaufman and Wiggins regarding his emission of a strong odor of alcohol, use of slurred speech and unsteadiness on his feet nor does Robinson deny that he had been drinking on the night in question or that the store clerk reported his disruptive behavior inside the store to law enforcement

---

[3]"A person commits the crime of public intoxication if he appears in a public place under the influence of alcohol, narcotics or other drug to the degree that he endangers himself or another person or property, or by boisterous and offensive conduct annoys another person in his vicinity."  *Ala. Code* § 13A-11-10.

officials.  Robinson, however, asserts that he does not believe Kaufman actually observed his disruptive actions inside the store because, to his knowledge, he was not engaged in this behavior when Kaufman arrived at the store.  *Plaintiff's Response - Doc. No. 24* at 2; *Plaintiff's Response Affidavit - Doc. No. 24-1* at 3.  Robinson hypothesizes that when Kaufman initially entered the store he did solely under the impression that a possible theft had occurred and, based on these circumstances, the "intent was to arrive and complete [his] very mental thought - the intent to arrest" and although Kaufman stated he handcuffed Robinson for "security precautions ... once he restrained Robinson his mental intent [to arrest Robinson for theft] was done[,]" even though Kaufman made no actual statement regarding arrest at that precise time.  *Plaintiff's Response Affidavit - Doc. No. 24-1* at 4.  Robinson asserts that since Kaufman had information regarding a possible theft from the dispatcher his "sole intent [to arrest] was done when he placed handcuffs [on] and restrained [Robinson] to get his evidence for the theft...."  *Id*. at 5.  Robinson alleges that the initial detention, though not actually identified as an arrest, nevertheless constituted a full arrest because Kaufman entered the store with the intent "to complete said arrest for theft...."  *Id*. at 5.  Robinson maintains that once Kaufman determined that no theft or attempted theft had occurred on the night in question Kaufman then, for the first time, advised Robinson he was "under arrest" and identified the offense underlying the arrest as "public intoxication."  *Id*.

11

Robinson complains that he should not have been arrested for public intoxication as, in his opinion, he did not "pose a danger to the store clerk," he did not harm himself nor was he threatening or annoying anyone. *Id*. at 7.  Notably, Robinson concedes that he acted disruptively while inside the store, approached the clerk behind the counter in a physically intimidating manner, verbally accosted the clerk and damaged store property while attempting to exit the store.  He likewise does not dispute the officers' assertions that he admitted consuming alcohol prior to entering the store, smelled of alcohol, spoke with slurred speech and was unsteady on his feet.

After the officers secured Robinson in Wiggins' patrol unit, Kaufman went to his vehicle and began preparation of an arrest report.  In order to complete this report, Kaufman "entered the name 'Clarence Robinson' in [the] in-car computer and pulled up the driver's license photograph associated with this name and it did not match the Mr. Robinson [currently] detained. I had not checked [Robinson's] photograph the night before when I had contact with him, I simply checked for warrants on the name he gave me.  I confronted Mr. Robinson about using a false name and [the other inaccurate] information he had given me and he admitted he gave me his brother's name and a false date of birth and social security number.  He [then] told me his name was 'James Robinson.'  When I checked the name 'James Robinson,' the photograph [for this individual] matched and it showed an outstanding fugitive warrant from the Department of Corrections for a parole

12

violation and two outstanding warrants from the Dothan Municipal Court [for failure to appear on two separate traffic violations].  Mr. James Robinson was then arrested on the three outstanding warrants.  [Based on the evidence in my possession, I believed that] Mr. Robinson lied to me about [his] identity to avoid being arrested on the warrants therefore I arrested him for the felony charge of using a false identity to obstruct justice under Ala. Code § 13A-8-194 (1975)."[4]  *Defendants' Exhibit 1 to the Special Report (Affidavit of William Kaufman) - Doc. No. 7-1* at 4 (citation to exhibit omitted); *Defendants' Exhibit 3 to the Special Report (Outstanding Warrants for Arrest) - Doc. No. 7-3* at 1-6.  As previously noted, *infra* at 9, Robinson asserts that he did not provide any identifying information to Kaufman during the incident at the convenience store and alleges that Kaufman simply assumed his identity based on the previous night's encounter.  *Plaintiff's Response Affidavit - Doc. No. 24-1* at 2.

On March 1, 2011, a grand jury for Houston County issued a two count indictment against Robinson for use of a false identity to obstruct justice and public intoxication. *Defendants' Exhibit 5 to the Special Report - Doc. No. 7-5* at 1.  On July 23, 2012, the felony charge of obstructing justice by using a false identity was amended to a misdemeanor charge of giving a false name to a law enforcement officer.  On July 26,

---

[4]"A person commits the crime of obstructing justice using a false identity if he or she uses identification documents or identifying information of another person or a fictitious person to avoid summons, arrest, prosecution, or to impede a criminal investigation." *Ala. Code* § 13A-8-194(a).  "Obstructing justice using a false identity is a Class C felony." *Ala. Code* § 13A-8-194(b).

2012, Robinson entered guilty pleas to giving a false name to law enforcement officials and public intoxication. *Defendants' Exhibit 1 to the Supplemental Special Report - Doc. No. 40-1* at l-2; *Defendants' Exhibit 2 to the Supplemental Special Report - Doc. No. 40-2* at l-2.

## B. Initial Detention

To the extent Robinson complains Kaufman illegally detained him while obtaining information relative to the incident at the convenience store, this claim provides no basis for relief. "The Fourth Amendment is not, of course, a guarantee against ***all*** searches and seizures, but only against ***unreasonable*** searches and seizures." *United States v. Sharpe*, 470 U.S. 675, 682 (1985) (emphasis in original). In determining whether an investigative detention is reasonable the Supreme Court has adopted "a dual inquiry ... approach" under which a court must "examine 'whether the officer's action was justified at its inception [by reasonable suspicion], and whether it was reasonably related in scope to the circumstances which justified the interference in the first place.'" *Id.* (quoting *Terry v. Ohio*, 392 U.S. 1, 20 (1968); *Brown v. Texas*, 443 U.S. 47, 51 (1979) (internal citations omitted) (A law enforcement "officer may detain a suspect briefly for questioning although he does not have 'probable cause' to believe that the suspect is involved in criminal activity, as is required for a traditional arrest.... However, ... the officer[] [must] have a reasonable suspicion, based on objective facts, that the individual is involved in criminal activity.").

14

"An investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the [detention]." *Florida v. Royer*, 460 U.S 491, 503 (1983). "[I]n assessing the effect of the length of the detention, we take into account whether the police diligently pursue their investigation." *United States v. Place,* 462 U.S. 696, 709 (1983). There is, however, no "hard-and-fast time limit for a permissible" investigative detention. *Sharpe*, 470 U.S. at 685; *Place*, 462 U.S. at 709, n.10 ("We understand the desirability of providing law enforcement authorities with a clear rule to guide their conduct. Nevertheless, we question the wisdom of a rigid time limitation. Such a limit would undermine the equally important need to allow authorities to graduate their responses to the demands of any particular situation."). "While it is clear that 'the brevity of the invasion of the individual's Fourth Amendment interests is an important factor in determining whether the seizure is so minimally intrusive as to be justifiable on reasonable suspicion,' ... [the Supreme Court has] emphasized the need to consider the law enforcement purposes to be served by the [detention] as well as the time reasonably needed to effectuate those purposes." *Sharpe*, 470 U.S. at 685 (internal citations omitted). In assessing whether an investigatory detention is reasonable, "it [is] appropriate to examine whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant.... A court making this assessment should take care to consider whether the

15

police are acting in a swiftly developing situation, and in such cases the court should not indulge in unrealistic second-guessing." *Id*. at 686.

Under *Terry* and its progeny, police can briefly detain a person for investigative purposes if the officer has "a reasonable suspicion, grounded in specific and articulable facts, that a person they encounter was involved in ... [criminal activithy]...." *United States v. Hensley*, 469 U.S. 221, 229 (1985).

> "Reasonable suspicion exists when the detaining officer can point to specific and articulable facts that, when taken together with rational inferences from those facts, reasonably warrant the ... seizure." *United States v. Estrada,* 459 F.3d 627, 631 (5th Cir. 2006). Reviewing courts making reasonable suspicion determinations "must look at the totality of the circumstances of each case to see whether the detaining officer has a particularized and objective basis for suspecting legal wrongdoing." *United States v. Arvizu,* 534 U.S. 266, 122 S.Ct. 744, 750, 151 L.Ed.2d 740 (2002) (internal quotation marks omitted). In evaluating whether or not an officer's suspicion is reasonable, "due weight must be given ... to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience." *Terry*, 88 S.Ct. at 1883. "Although an officer's reliance on a mere hunch is insufficient to justify a stop [or investigatory detention], the likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard." *Arvizu,* 122 S.Ct. at 751 (internal citations and quotation marks omitted).

*United States v. Pack*, 612 F.3d 341, 352 (5th 2010); *Hensley,* 469 at 229 ("[I]f police have a reasonable suspicion, grounded in specific and articulable facts, that a person they encounter was involved in ... a [criminal offense], then [they may temporarily detain the suspect] to investigate that suspicion."); *United States v. Tehrani,* 49 F.3d 54, 58 (2nd Cir. 1995) (citation omitted) (A brief "investigative detention" is permissible where the officer

has "'reasonable suspicion' to believe that criminal activity has occurred or is about to

occur.").

> Although the concept of reasonable suspicion is not susceptible to precise
> definition, *see, e.g., Sokolow,* 490 U.S. at 7, 109 S.Ct. at 1585; *Hooper,* 935
> F.2d at 493, the requisite level of suspicion to make an investigative stop is
> "'considerably less than proof of wrongdoing by a preponderance of the
> evidence.'" *Villegas,* 928 F.2d at 516 (quoting *Sokolow,* 490 U.S. at 7, 109
> S.Ct. at 1585). Still, "[t]he Fourth Amendment requires 'some minimal level
> of objective justification' for making the stop." *Sokolow,* 490 U.S. at 7, 109
> S.Ct. at 1585 (quoting *INS v. Delgado,* 466 U.S. 210, 217, 104 S.Ct. 1758,
> 1763, 80 L.Ed.2d 247 (1984)). Consequently, an officer's inchoate suspicion
> or mere hunch is insufficient to justify a *Terry*-type detention. *Sokolow,* 490
> U.S. at 7, 109 S.Ct. at 1585 (citing *Terry,* 392 U.S. at 27, 88 S.Ct. at 1883).

*United States v. Glover*, 957 F.2d 1004, 1009-1010 (2nd Cir. 1992). "The standard for

determining whether a particular stop [or detention] was justified by reasonable suspicion

is an objective one ... not dependent on the intentions or motivations of the particular

detaining officers." *Id*. at 1010. In evaluating whether an investigative detention is

reasonable under the Fourth Amendment, a court must determine "'whether the officer's

action was justified at its inception, and whether the action was reasonably related in scope

to the circumstances which justified the interference in the first place.'" *Sharpe*, 470 at

682, quoting *Terry,* 392 U.S. at 20. "[T]he essence of all that has been written is that the

totality of the circumstances–the whole picture–must be taken into account [by the court]."

*United States v. Cortez,* 449 U.S. 411, 417 (1991). The test for reasonable suspicion is

lenient and "not a difficult one to satisfy." *United States v. Oates,* 560 F.2d 45, 63 (2nd

Cir.1977).   The law is well settled that "[t]he Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape." *Adams v. Williams*, 407 U.S. 143, 145 (1972).

The circumstances of this case, taken as a whole, are sufficient to demonstrate that Officer Kaufman had reasonable suspicion to detain Robinson at the time Kaufman entered the convenience store.   Specifically, the store clerk had provided law enforcement officials information regarding possible criminal activity by Robinson and had detained Robinson in the store prior to the officers' arrival at the scene.   Kaufman observed Robinson inside the store acting in a disorderly manner, i.e., yelling and throwing objects.   *Defendants' Exhibit 1 to the Special Report (Affidavit of William Kaufman) - Doc. No. 7-1* at 3.   It is likewise clear that Kaufman pursued his investigation in a reasonable and diligent manner as he placed Robinson under arrest for public intoxication within a few minutes of the initial detention.   "Clearly this case does not involve any delay unnecessary to the legitimate investigation of the law enforcement officers. [Robinson] presented no evidence that the officers were dilatory in their investigation...."   *Sharpe*, 470 U.S. at 688. The defendants are therefore entitled to summary judgment on the initial detention claim.

## C.  False Arrests

Robinson complains that Kaufman subjected him to illegal arrests for public

intoxication and obstruction of justice by use of a false identity.  Under the circumstances of this case and well established law, this claim is without merit.

"An arrest without a warrant and lacking probable cause violates the Constitution and can underpin a § 1983 claim, but the existence of probable cause at the time of arrest is an absolute bar to a subsequent constitutional challenge to the arrest. *Case v. Eslinger,* 555 F.3d 1317, 1326–27 (11th Cir. 2009); *Kingsland v. City of Miami,* 382 F.3d 1220, 1226, 1232 (11th Cir.2004); *Ortega v. Christian,* 85 F.3d 1521, 1525 (11th Cir.1996).  Probable cause exists where the facts within the collective knowledge of law enforcement officials, derived from reasonably trustworthy information, are sufficient to cause a person of reasonable caution to believe that a criminal offense has been or is being committed. *Madiwale v. Savaiko,* 117 F.3d 1321, 1324 (11th Cir.1997)." *Brown v. City of Huntsville, Ala.*, 608 F.3d 724, 734 (11th Cir. 2010).  Probable cause to arrest is present when an arrest is "objectively reasonable based on the totality of the circumstances.....  This standard is met when the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense....  Although probable cause requires more than suspicion, it does not require convincing proof ... and need not reach the [same] standard of conclusiveness and probability as the facts necessary to support a conviction." *Lee v. Ferraro,* 284 F.3d 1188,

1195 (11th Cir.2002) (internal quotation marks and citations omitted).  "[P]robable cause is a flexible, common-sense standard....  [I]t does not demand any showing that [the officer's belief that an offense has been or is being committed] is correct or more likely true than false." *Texas v. Brown,* 460 U.S. 730, 742 (1983).

Upon review of the evidentiary materials filed in this case, the court concludes that Officer Kaufman had probable cause to arrest Robinson for public intoxication and, subsequently, obstruction of justice for using a false identity.  Initially, when Kaufman actually placed Robinson under arrest for public intoxication, Kaufman had knowledge of information which established probable cause to arrest Robinson for this offense.  Specifically, the dispatcher had provided Kaufman details with respect to Robinson's actions inside the convenience store, Kaufman had previously observed Robinson acting in a disruptive manner and, upon speaking with Robinson, Kaufman smelled alcohol emanating from Robinson and Robinson's speech was slurred.  With respect to the arrest for obstruction of justice, Kaufman had information within his possession which demonstrated that Robinson previously provided false information to him regarding Robinson's identity.  Based on the facts available to him, Kaufman deduced that Robinson, in providing this false information, was attempting to avoid arrest on the outstanding warrants which had been issued against him.  In light of the foregoing, summary judgment is due to be granted in favor of the defendants on the illegal arrest claim.

20

### D.  Conspiracy

Robinson asserts that the defendants conspired with the convenience store clerk to effectuate his arrests for public intoxication and obstruction of justice by use of a false identity.   *Complaint - Doc. No. 1* at 4.   "Conspiring to violate another person's constitutional rights violates section 1983.  *Dennis v. Sparks,* 449 U.S. at 27, 101 S.Ct. at186 (1980); *Strength v. Hubert,* 854 F.2d 421, 425 (11th Cir.1988), *overruled in part on other grounds by Whiting v. Traylor,* 85 F.3d 581, 584 n.4 (11th Cir.1996)."  *Rowe v. City of Fort Lauderdale*, 279 F.3d 1271, 1283 (11th 2002).  "To prove a 42 U.S.C. § 1983 conspiracy, a plaintiff 'must show that the parties "reached an understanding" to deny the plaintiff his or her rights [and] prove an actionable wrong to support the conspiracy.' *Bendiburg v. Dempsey*, 909 F.2d 463, 468 (11th Cir.1990), *cert. denied,* 500 U.S. 932, 111 S.Ct. 2053, 114 L.Ed.2d 459 (1991)....  [T]he linchpin for conspiracy is agreement...." *Bailey v. Board of County Comm'rs of Alachua County*, 956 F.2d 1112, 1122 (11th Cir.), *cert. denied,* 506 U.S. 832, 113 S.Ct. 98, 121 L.Ed.2d 58 (1992)  In order for a plaintiff "to establish the 'understanding' or 'willful participation' required to show a conspiracy, ... [he] must [produce] some evidence of agreement between the defendants....  For a conspiracy claim to survive a motion for summary judgment '[a] mere "scintilla" of evidence ... will not suffice; there must be enough of a showing that the jury could reasonably find for that party.'  *Walker v. Darby,* 911 F.2d 1573, 1577 (11th Cir. 1990)."

*Rowe*, 279 F.3d at 1283-1284.  Merely "stringing together" adverse acts of individuals is insufficient to demonstrate the existence of a conspiracy.  *Harvey*, 949 F.2d at 1133.

The defendants deny that they conspired to obtain Robinson's arrests and maintain that his arrests were based on the facts and circumstances available at the time of the arrests.  The court has carefully reviewed the pleadings filed by the plaintiff.  There is a total lack of evidence to support Robinson's suppositious theory that the defendants engaged in conspiratorial acts against him.  Specifically, Robinson has failed to present any evidence which demonstrates that the defendants "reached an understanding" to violate his rights or committed an "actionable wrong to support the conspiracy."  *Bailey*, 956 F.2d at 1122; *Bendiburg*, 909 F.2d at 468.  At best, Robinson's assertions are self-serving, purely conclusory allegations which fail to assert those material facts necessary to sufficiently plead a conspiracy between the defendants and the store clerk.  *Harvey*, 949 F.2d 1133; *Fullman*, 739 F.2d at 556-557.  Consequently, Robinson has failed to produce any probative evidence of a conspiracy and summary judgment is therefore due to be granted in favor of the defendants on this claim.  *Bailey*, 956 F.2d at 1122.

## IV.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1.  The defendants' motion for summary judgment be GRANTED.

2.  This case be dismissed with prejudice.

3.  Judgment be GRANTED in favor of the defendants.

4.  No costs be taxed herein.

It is further

ORDERED that on or before October 29, 2014 the parties may file objections to this Recommendation.  Any objections filed must clearly identify the findings in the Magistrate Judge's Recommendation to which the party is objecting.  Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); *see Stein v. Reynolds Securities, Inc*., 667 F.2d 33 (11th Cir. 1982); *see also Bonner, 66*1 F.2d at 1209 (adopting pre-October 1, 1981 opinions of the Fifth Circuit as binding precedent).

Done this 14th day of October, 2014.


/s/Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE

23